UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

---

PHILLIP C. RUEHL and PC RUEHL
ENGINEERING, INC.,

        Plaintiffs,

    v.

AM GENERAL LLC,

        Defendant.

Civil Action No. 3:14-CV-317-JVB

---

## AMENDED COMPLAINT

---

Plaintiffs Phillip C. Ruehl ("Ruehl") and PC Ruehl Engineering, Inc. ("PC Ruehl"), by their attorneys, Martin W. Kus, David P. Jones, and Matthew J. Hagenow of the law firm of Newby Lewis Kaminski & Jones, LLP, and Anthony Baish, Nicholas A. Kees, and Matthew M. Wuest of the law firm of Godfrey & Kahn, S.C., for their complaint against defendant AM General LLC ("AM General") allege as follows:

### THE PARTIES

1.    Ruehl is a resident of the state of Wisconsin who resides at 9404 West North Avenue, Apartment 7, Wauwatosa, Wisconsin.

2.    PC Ruehl is a corporation organized under the laws of the state of Wisconsin and whose principal place of business is located in Wisconsin.

3.    AM General is, upon information and belief, a limited liability company organized under the laws of the state of Delaware, whose principal place of business is located at 105 North Niles Avenue, South Bend, Indiana.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, and for breach of contract that is closely related to the claim for patent infringement. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367(a).

5. This Court has personal jurisdiction over AM General because AM General is a domestic corporation and because it is engaged in substantial and not isolated activities within this state, and is transacting business within the Northern District of Indiana, that business including, but not limited to, the use of products and systems that practice the subject matter claimed in the patent involved in this action.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) and 1400(b), as AM General's principal place of business is located in this District, a substantial portion of the events giving rise to this claim have taken place and are still taking place in this District, and AM General has committed and continues to commit infringing acts in this District.

## FACTS

7. For over 30 years, from September 1969 to November 2001, Ruehl was employed by A.O. Smith Corporation Automotive Products Company ("A.O. Smith") in Milwaukee, Wisconsin, and by its 1997 purchaser, Tower Automotive, as an automotive frame chassis engineer. In his various positions, including as Manager of Product Design for the company, Ruehl's responsibilities included contributing to the designs of many light truck and sport utility vehicle ("SUV") frames.

8. AM General manufactures, markets and sells a High Mobility Multi-Purpose Wheeled Vehicle ("HMMWV," or, as it is commonly known, the "Humvee"). The Humvee is

built on a multi-purpose platform which will accommodate a broad range of configurations. Since the early 1980s, AM General has manufactured and sold Humvees to the United States government, both for end use by the U.S. military and for resale to others (collectively, "U.S. Government Humvee Sales"). AM General has also manufactured and sold Humvees directly to third parties, including foreign governments, where the Humvees sold by AM General were not made for or used by the United States government (the "Non-U.S. Government Humvee Sales").

9. Ralf Pionke was also employed by A.O. Smith and, subsequently, by Tower Automotive, as an automotive chassis engineer. On some assignments, Pionke worked directly with Ruehl during his employment with A.O. Smith and Tower Automotive. Pionke left Tower Automotive in approximately 2000 and eventually went to work for AM General.

10. In November 2004, Pionke contacted Ruehl to inquire if Ruehl was interested in consulting with AM General on a project to upgrade the frame rails for its Humvee line of trucks. Pionke described the frame rail project objectives to Ruehl and sent Ruehl drawings showing the current side rail design.

11. From December 2004 through February 2005, Ruehl studied the drawings in light of the objectives described by Pionke. Ruehl was not under contract with AM General and was not being paid or otherwise compensated by AM General. Ruehl began to consider ways to meet AM General's objectives so that he could add value if and when AM General decided it wanted to retain him as a consultant.

12. Ruehl began to consider several potential solutions which he believed to be the most efficient means of solving the stated challenges. He sketched up many of these solutions so as to remember each and to be able to explain how he would proceed with each solution if he were asked.

13. One of the new solutions Ruehl conceived of and sketched was a design that solved many of the unique dimensional and quality problems that AM General was experiencing with its current frame rail design (the "Invention"). The Invention is comprised of a box-type frame rail assembly. The frame assembly has a first section, with a web, a pair of flanges and a number of holes with "cupped" spacer locators. This first section is placed onto a fixture assembly with the holes fitting onto pilots. A spacer is placed over each of the pilots and engaged with the locator of the respective hole in the first section. A second section, also having a web, a pair of flanges, and a number of holes with locators, is then placed onto the fixture assembly, with the holes fitting onto the pilots, and the second end of each spacer is engaged with the locator associated with each respective hole in the web of the second section. Finally, the flanges of the first and second sections are secured together.

14. AM General was never invoiced and never paid Ruehl for the work he did during this preparation period. In fact, AM General specifically told Ruehl that the rail design program itself was tentative, and that if it did go forward, he would not be "on board" and under contract until he had met with representatives of AM General and signed additional documents at AM General's Livonia, Michigan facility.

15. On February 26, 2005, having already conceived of the Invention, PC Ruehl received from AM General a purchase order dated February 24, 2005, for "engineering support for HMMWV frame rail feasibility study." Under the purchase order, AM General asked Ruehl to provide engineering support for a feasibility study and stated that PC Ruehl would be paid $150 per hour for Ruehl's efforts. Ruehl signed the purchase order on behalf of PC Ruehl.

16. On March 5, 2005, Ruehl drew a more detailed, presentable, and buildable sketch illustrating the Invention in its preferred embodiment, and had the owner of a Milwaukee-area

prototype shop confirm its manufacturability, witness it, and agree to build a small "proof-of-concept" sample.  Ruehl did not bill, and was not paid by, AM General for this work.

17. On March 7, 2005, with his Invention already conceived, design in hand and sample ordered, Ruehl attended his first meeting with AM General, a meeting which AM General referred to as the "kick off" meeting.

18. At the kick off meeting, Ruehl, on behalf of PC Ruehl, and AM General signed a Mutual Confidentiality Agreement drafted by AM General.

19. AM General required that Ruehl sign the agreement as the first order of business at the kick off meeting.

20. The Mutual Confidentiality Agreement provided that all confidential information disclosed by Ruehl to AM General and by AM General to Ruehl would "remain the property of [the] Disclosing Party[.]"  "Confidential Information" was defined in the agreement as "[a]ny information that has value to the Disclosing Party and is not generally known to its competitors," and specifically included "ideas, concepts, plans,…drawings,…products, processes[.]" Moreover, the agreement stated, "Nothing contained in this Agreement shall be construed as granting or conferring to Receiving Party any patent rights or licenses from Disclosing Party either expressly or by implication[.]"  A copy of the Mutual Confidentiality Agreement is attached hereto as **Exhibit A**.

21. Ruehl's idea for a new frame rail joint was an idea that, pursuant to the Mutual Confidentiality Agreement, remained his property as he provided engineering support services to AM General.

22. Immediately following the March 7 kick off meeting, Ruehl began three weeks of working with representatives from AM General and leading a team of computer aided design

("CAD") designers and stress analysts at a design shop to provide engineering support services for the frame rail feasibility study.

23. Ruehl was paid for his time in providing such engineering support services in accordance with the signed February 26, 2005 purchase order.

24. At no time did AM General pay Ruehl or PC Ruehl for the transfer of ownership of Ruehl's Invention.

25. On April 21, 2005, AM General sent PC Ruehl another purchase order seeking additional "engineering support of frame rail review." Thereafter, Ruehl provided additional engineering support services to AM General according to the terms of that purchase order.

26. Ruehl's Invention is a much improved means of assembling frame rails, not only improving strength, repeatability, and consistency in performance, but significantly decreasing the cost of the assembly of the rail, frame, and vehicle, and reducing the potential for "lost" vehicle builds, vehicle assembly line stoppage, and scrapped frame side rails.

27. On November 1, 2005, Ruehl filed a patent application on the Invention, Provisional Patent Application No. 60/732,451, and followed it up with a non-provisional patent application, Patent Application Serial No. 11/279,321, on April 11, 2006.

28. AM General filed its own patent application on Ruehl's Invention, filing Provisional Patent Application Serial No. 60/764,045, on February 1, 2006, and non-provisional patent application Serial No. 11/670,217, on February 1, 2007. Notably, AM General listed Ruehl as the sole inventor of the Invention, and AM General as the sole owner of the corresponding rights.

29. AM General has advised Ruehl that it is AM General's position that Ruehl had an obligation to assign his rights in the Invention to AM General, and its patent application has

6

provided the basis of the rejection of Ruehl's application on the ground of nonstatutory obviousness-type double patenting.

30. On information and belief, AM General has incorporated Ruehl's Invention into the frame rail assembly it is now using for its Humvee product. AM General is manufacturing and selling its Humvee product – as improved by Ruehl's Invention – through both U.S. Government and Non-U.S. Government Humvee Sales.

31. On November 1, 2005, the date Ruehl filed his provisional patent application, he informed AM General of the filing and of his expectation of receiving royalties for its use. Several months later Ruehl was asked to consult on an unrelated project for Maxion, Brazil's largest automotive structural supplier, who had been released to produce the HMMWV rail assembly. The consulting would be on a heavy-duty truck frame for Volkswagen. On his first visit to Maxion's home plant in the fall of 2006, he was shown the nearly complete new HMMWV rail line. Upon observing the rail line, Ruehl was able to confirm that the rail line incorporated his Invention.

32. On July 16, 2013, the United States Patent and Trademark Office duly and legally issued to Ruehl United States Patent No. 8,484,930 B2 (the "'930 Patent"), entitled "Boxed Frame Member and Method for Manufacture" covering the Invention. A true and correct copy of the '930 Patent is attached hereto as **Exhibit B**.

### COUNT I – INFRINGEMENT OF THE '930 PATENT
**(Limited To AM General's Non-U.S. Government Humvee Sales Incorporating Ruehl's Invention)**

33. Each and every allegation of paragraphs 1 through 32 is incorporated herein as if fully set forth.

34. Upon information and belief, AM General has infringed and is still infringing one or more claims of the '930 Patent by using the Invention in and for its Non-U.S. Government Humvee Sales.

35. As a direct and proximate result of AM General's infringement of the '930 Patent, Ruehl has suffered and is suffering damages in an amount to be determined at trial.

## COUNT II – BREACH OF CONTRACT

36. Each and every allegation of paragraphs 1 through 32 is incorporated herein as if fully set forth.

37. Upon information and belief, AM General has been using Ruehl's Invention in its manufacture of frame assemblies for Humvees since 2006 (prototypes since 2005) without compensation to PC Ruehl.

38. AM General's use of Ruehl's Invention in its manufacture of frame assemblies for Humvees without compensation to PC Ruehl is a breach of the Mutual Confidentiality Agreement signed by AM General and PC Ruehl on March 7, 2005.

39. As a result of AM General's breach of the Mutual Confidentiality Agreement, PC Ruehl has been damaged in an amount to be determined at trial.

WHEREFORE, Ruehl and PC Ruehl demand judgment against AM General as follows:

A) awarding damages to PC Ruehl for breaching the Mutual Confidentiality Agreement in an amount to be determined at trial;

B) a judgment that AM General has directly infringed and continues to infringe one or more claims of the '930 Patent;

C) a judgment that AM General's infringement of the '930 Patent has been willful;

D)  an injunction pursuant to 35 U.S.C. § 283 enjoining AM General from infringing the '930 Patent for the full term thereof;

E)  awarding damages to Ruehl for AM General's infringement of the '930 Patent in an amount to be determined at trial;

F)  awarding treble damages to Ruehl pursuant to 35 U.S.C. § 284;

G) declaring this to be an exceptional case under 35 U.S.C. §285;

H)  awarding Ruehl and PC Ruehl their costs and fees, including attorneys' fees, in this action; and

I)  awarding such other and further relief as the Court deems just and equitable.

Dated this 12th day of September, 2014.

NEWBY LEWIS KAMINSKI & JONES, LLP

By: /s/ Martin W. Kus
Martin W. Kus
David P. Jones
Matthew J. Hagenow
916 Lincolnway
La Porte, IN 46352
Phone: 219-362-1577
Fax: 219-362-2106
mwkus@nlkj.com
mjhagenow@nlkj.com

Co-Counsel:
Godfrey & Kahn, S.C.
Anthony Baish
Nicholas A. Kees
Matthew M. Wuest
780 North Water Street
Milwaukee, WI  53202-3590
Phone:  414-273-3500
Fax:  414-273-5198
abaish@gklaw.com
nakees@gklaw.com
mwuest@gklaw.com

*Attorneys for Plaintiffs Phillip C. Ruehl and PC Ruehl Engineering, Inc.*

12113107.1

### Jury Demand

Plaintiffs, by counsel, demand trial by jury.

NEWBY LEWIS KAMINSKI & JONES, LLP

By:/s/ Martin W. Kus
Martin W. Kus
David P. Jones
Matthew J. Hagenow
916 Lincolnway
La Porte, IN 46352
Phone: 219-362-1577
Fax: 219-362-2106
mwkus@nlkj.com
mjhagenow@nlkj.com

Co-Counsel:
Godfrey & Kahn, S.C.
Anthony Baish
Nicholas A. Kees
Matthew M. Wuest
780 North Water Street
Milwaukee, WI  53202-3590
Phone:  414-273-3500
Fax:  414-273-5198
abaish@gklaw.com
nakees@gklaw.com
mwuest@gklaw.com

*Attorneys for Plaintiffs, Phillip C. Ruehl and PC Ruehl Engineering, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

PHILLIP C. RUEHL and PC RUEHL
ENGINEERING, INC.,

      Plaintiffs,

v.

AM GENERAL LLC,

      Defendant.

Case No. 3:14-cv-317-JVB

## PROOF OF SERVICE

I hereby certify that on the 12th day of September, 2014, I electronically filed a complete copy of the Amended Complaint and this Proof of Service with the Clerk of the Court using the CM/ECT system and sent notification of such filing to the following:

| | |
|---:|:---|
| Alice J Springer | alice.springer@btlaw.com |
| D Randall Brown | rbrown@btlaw.com |
| Anthony S Baish | tbaish@gklaw.com |
| Nicholas A Kees | nakees@gklaw.com |
| Matthew M. Wuest | mwuest@gklaw.com |
| David P Jones | dpjones@nlkj.com |
| Matthew J Hagenow | mjhagenow@nlkj.com |

**NEWBY, LEWIS, KAMINSKI AND JONES, LLP**

BY:  /S/ Martin W. Kus
      Martin W. Kus, # 5377-46